IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| DALE MICHAEL, ROBERT KNOTT, ROBERT NICHOLS, APRIL FOSTER, JEREMY FOSTER, and LYNN KRAY, on behalf of themselves and all other similarly situated individuals,<br><br>           Plaintiffs,<br>     v.<br><br>INDIANA PACKERS CORPORATION,<br><br>           Defendant. | CIVIL ACTION NO.:<br>4:08-cv-00013-RLM-APR<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEYS' FEES AND COSTS** |

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

II.  LEGAL ARGUMENT ....................................................................................................... 2

  A.  THE FEE SHIFTING PROVISIONS OF THE FLSA AND INDIANA WAGE LAW PROVIDE FOR THE AWARD OF ATTORNEYS' FEES IN SETTLEMENT ............... 2

  B.  THE COURT SHOULD APPROVE THE PARTIES' NEGOTIATED AGREEMENT REGARDING FEES USING THE COMMON FUND APPROACH ............................... 4

    1.  The Risk of Nonpayment Supports The Requested Fee ............................................... 5

    2.  The Quality and Skill With Which Class Counsel Performed The Required Legal Services to Reach Settlement Supports The Requested Fee ........................................ 7

    3.  The Stakes of the Case for the Individual Class Members and Their Reaction to the Settlement Supports the Requested Fee ...................................................................... 8

  C.  THE TIME AND LABOR EXPENDED BY CLASS COUNSEL SUPPORTS THE REQUESTED FEE ........................................................................................................ 10

  D.  FEE AWARDS IN SIMILAR CASES ESTABLISH THE MARKET RATE AND SUPPORT THE REQUESTED FEE ............................................................................. 12

  E.  CLASS COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE REIMBURSED .............................................................................................................. 14

III. CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

Armstrong v. Whirlpool Corp., 2007 U.S. Dist. LEXIS 14635 (M.D. Tenn. 2007) ...................... 6

Bankston v. Illinois, 60 F.3d 1249 (7th Cir. 1995) .................................................................... 10

Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728 (1981) ...................................... 8

Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp., 480 F. Supp. 1195 (S.D.N.Y. 1979), aff'd 622 F.2d 1106 (2nd Cir. 1980) ................................................................. 13

Blum v. Stenson, 465 U.S. 886 (1984) ....................................................................................... 11

Brytus v. Spang & Co., 203 F.3d 238 (3rd Cir. 2000) ................................................................. 4

Connolly v. Nat'l Sch. Bus. Serv., Inc., 177 F.3d 593 (7th Cir. 1999) ........................................ 10

Cook v. Niedert, 142 F.3d 1004 (7th Cir. 1998) .......................................................................... 4

Daimler Chrysler Corp. v. Franklin, 814 N.E.2d 281 (Ind. App. Ct. 2004) ............................... 10

Family L.P. v. Price Waterhouse LLP, 2001 WL 1568856 (N.D. Ill. 2001) .............................. 13

Florin v. Nationsbank of Georgia, N.A., 34 F.3d 560 (7th Cir. 1994) ......................................... 4

Gary v. Sheahan, No. 96-c-7294, 2001 WL 1543514 (N.D. Ill. Nov. 30, 2001) .......................... 4

Gaskill v. Gordon, 160 F.3d 361 (7th Cir. 1998) ....................................................................... 13

Gastineau v. Wright, 592 F.3d 747 (7th Cir. 2010) .................................................................... 10

Gilbert v. First Alert, Inc., 1998 WL 14206 (N.D. Ill. 1998) ..................................................... 13

Goldsmith v. Technology Solutions Co., 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. 1995) .......... 13

Gribble v. Cool Transports, Inc., No. 06-cv-04863, 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008) ................................................................................................................................ 14

Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1998) ........................................................... 6

Henry v. Webermeier, 738 F.2d 188 (7th Cir. 1984) .................................................................. 14

In re Abbott Laboratories Securities Litigation, 1995 WL 792083 (N.D. Ill. July 3, 1995) ....... 12

In re Ampicillin Antitrust Litigation, 526 F. Supp. 494 (D.D.C. 1981) ..................................... 13

In re Buspirone Patent & Antitrust Litig., MDL No. 1413, 2003 U.S. Dist. LEXIS 26538 (S.D.N.Y. Apr. 11, 2003) ................................................................................................... 13

In re Crazy Eddie Sec. Litig, 824 F. Supp. 320 (E.D.N.Y. 1993) ............................................... 10

In re Gen. Pub. Utils. Sec. Litig., No. 79-1420, 1983 U.S. Dist. LEXIS 11641 (D.N.J. Nov. 16, 1983) ................................................................................................................................. 9

In re Prudential Sec. Ltd. P'ships. Litig., 985 F. Supp. 410 (S.D.N.Y. 1997) ............................... 9

In re Synthroid Mktg. Litig., 264 F.3d 712 (7th Cir. 2001) ........................................................... 5

Kleine-Albrandt v. Lamb, 597 N.E. 2d 1310 (Ind. App. Ct. 1992) .......................................... 3, 9

Maher v. Gagne, 448 U.S. 122, 129 (1980) .................................................................................. 3

Maley v. Del Global Technologies Corp., 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................ 9

Montgomery v. Aetna Plywood, Inc., 231 F.3d 399 (7th Cir. 2000) ........................................... 13

Navarro v. Servisair, No. C 08-02716, 2010 WL 1729538 (N.D. Cal. Apr. 27, 2010) .................. 4

North Shore Hematology-Oncology Assoc., P.C. v. Bristol-Myers Squibb Co., No. 04 Civ. 248 (D.D.C. Nov. 30, 2004) ......................................................................................................... 13

Perdue v. Kenny A. ex rel. Winn, 130 S. Ct. 1662 (2010) ............................................................. 4

Perez v. Carey Intern., Inc., No. 06-22225, 2008 WL 4490750 (S.D. Fla. Sept. 26, 2008) ........... 8

Scott v. Sunrise Healthcare Corp., No. 95 C 1277, 1999 WL 787624 (N.D. Ill. Sept. 23, 1999) .. 8

Sherman v. Gateway Electronic Med. Management Sys., Inc., Nos. 1:07-cv-0947, 1:07-cv-0433, 2009 WL 48150, at *2 (S.D. Ind. Jan. 7, 2009) ...................................................................... 4

Skelton v. General Motors Corp., 860 F.2d 250 (7th Cir. 1988), cert. denied, 493 U.S. 810 (1989) ................................................................................................................................................ 4

Small v. Richard Wolf Med. Instruments Corp., 264 F.3d 702 (7th Cir. 2001) ............................ 3

Spegon v. Catholic Bishop, 175 F.3d 544 (7th Cir. 1999) ........................................................... 11

Spicer v. Board of Options Exchange, 844 F. Supp. 1226 (N.D Ill. 1993) .................................. 13

Staton v. Boeing Co., 327 F.3d 938 (9th Cir. 2003) ...................................................................... 4

Stoetzner v. United States Steel Corp., 897 F.2d 115 (3d Cir. 1990) .......................................... 10

Sutton v. Bernard, 504 F.3d. 688 (7th Cir. 2007) .......................................................................... 5

Taubenfeld v. AON Corp., 415 F.3d 597 (7th Cir. 2005) ........................................................ 5, 12

Uphoff v. Elegant Bath, Ltd., 176 F.3d 399 (7th Cir. 1999) .......................................................... 3

Van Gemert v. Boeing Co., 516 F. Supp. 412 (S.D.N.Y. 1981) .................................................. 13

Van Horn v. Nationwide Property and Cas. Ins. Co., No. 08-cv-605, 2010 WL 1751995 (N.D. Ohio Apr. 30, 2010) ................................................................................................................ 4

Vranken v. Atlantic Richfield Co., 901 F. Supp. 294 (N.D. Cal. 1995) ....................................... 13

Williams v. Rohm and Haas Pension Plan, 04-cv-0078, 2010 WL 1644571 (S.D. Ind. Apr. 21, 2010) ........................................................................................................................................ 10

Zabkowicz v. West Bend Co., 789 F.2d 540 (7th Cir. 1986) ........................................................ 14

## Statutes

29 U.S.C. § 216(b) .................................................................................................................. 2, 14

Indiana Code § 22-2-4-4 ................................................................................................................ 3

Indiana Code § 22-2-5-2 ................................................................................................................ 2

I.  **INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 23(h), Class Counsel for Plaintiffs Dale Michael, Robert Knott, Robert Nicholas, April Foster, Jeremy Foster, and Lynn Keay[1] (collectively "Plaintiffs"), individually and on behalf of themselves and all other similarly situated individuals, seek reimbursement for their counsel's fees and costs, as established by the Settlement Agreement between Plaintiffs and Defendant Indiana Packers Corporation ("Indiana Packers" or "Defendant") dated February 5, 2010. Pursuant to the terms of the Settlement Agreement, Defendant does not oppose this motion.

Plaintiffs allege that Defendant violated the federal Fair Labor Standards Act ("FLSA"), and Indiana state laws by requiring Indiana Packer's hourly employees to work substantial amounts of time without compensation ("off-the-clock"), failing to pay all wages due, and failing to pay overtime compensation. The alleged uncompensated time includes time that employees spent preparing to begin their work day after they arrived at Defendant's plant, donning and doffing personal protective clothing and equipment, obtaining and sanitizing safety equipment and gear, obtaining tools, equipment and supplies necessary for the performance of their work, and walking between work sites. Defendant denies all liability.

After engaging in mediation and subsequent negotiations, the Parties entered into a Settlement Agreement to resolve this action. The total amount of the settlement is $1,995,000.00. Settlement Class Members[2] are provided a 90-day period after mailing of the

---

[1] The correct spelling of Ms. Keay's last name is Keay, not Kray.

[2] "Settlement Classes" or "Settlement Class Members" both refer to all current and former non-exempt hourly production, maintenance and sanitation employees who were employed on a full-time basis by Indiana Packers at its Delphi, Indiana facility for at least one full week between March 12, 2005 and the date of preliminary approval of the Settlement Agreement. Because

1

Notice and Claim Form in which to submit a Claim Form if they so choose. The settlement is fair, reasonable and extremely beneficial to the members of the Settlement Classes. The Court entered an Order preliminarily approving the Settlement Agreement on March 12, 2010. (Dkt. No 231.)

Class Counsel now seeks as their reasonable attorneys' fees one-third of the total value of the settlement ($665,000), and $34,391.63 as reimbursement for their costs of bringing this suit. This amount will fairly compensate Class Counsel for work already performed in this case and for all of the work remaining to be performed in this case, including to ensure that the Settlement is fairly administered and implemented and obtaining dismissal of the action. This request is reasonable, given the results achieved and the difficulties litigating a case with transient and Spanish-speaking class members. The requested attorneys' fees are also in line with Seventh Circuit precedent for attorneys' fees in similar cases.

## II. LEGAL ARGUMENT

### A. THE FEE SHIFTING PROVISIONS OF THE FLSA AND INDIANA WAGE LAW PROVIDE FOR THE AWARD OF ATTORNEYS' FEES IN SETTLEMENT

The plaintiffs in a Fair Labor Standards Act case may recover their attorneys' fees and expenses under the statute's fee-shifting provision. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). Indiana wage and hour laws similarly provide for attorneys' fees paid by the employer in recovery by the employee. *See* Indiana Code § 22-2-5-2 ("[I]n any suit so brought to recover said wages or the liquidated damages for nonpayment therof, or both, the court shall tax and assess as costs in said case a

---

both Indiana state-law and FLSA claims were alleged in the lawsuit, Settlement Class Members waive their state-law claims unless they opt out pursuant to Fed. R. Civ. P. 23, but do not waive their FLSA claims unless they affirmatively opt in. *See* 29 U.S.C. § 216(b).

reasonable fee for the plaintiff's attorney or attorneys"); Indiana Code § 22-2-4-4 (providing for damages that include "a reasonable attorney's fee, to be recovered in a civil action…").

"Prevailing plaintiffs, which may include plaintiffs who favorably settle their cases, are entitled to reasonable attorney's fees under the FLSA." *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001); *see also Maher v. Gagne*, 448 U.S. 122, 129 (1980) ("The fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees."). Because a court-supervised settlement of FLSA claims is ultimately reduced to a judgment, under the FLSA, an award of reasonable fees is mandatory. *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 406 (7th Cir. 1999); s*ee also Kleine-Albrandt v. Lamb*, 597 N.E. 2d 1310, 1311 (Ind. App. Ct. 1992) (holding that award of reasonable fees are mandatory under Indiana wage statute).

Here, the parties entered into the Settlement Agreement on February 5, 2010, after participating in a two day mediation in Chicago, Illinois on September 16 and 17, 2009 before Michael Loeb, Esq., an experienced JAMS mediator, as well as an additional all-day in-person negotiating session in Philadelphia, Pennsylvania on December 8, 2009. Class Counsel's attorneys' fees were negotiated as part of the common fund, without a separate allowance for "statutory fees," although consideration was given to the applicable fee shifting provisions of the FLSA and Indiana state law as part of the mediation and settlement negotiations. This Settlement Agreement received preliminary approval by the Court on March 12, 2010. (Dkt. No 231.)

### B. THE COURT SHOULD APPROVE THE PARTIES' NEGOTIATED AGREEMENT REGARDING FEES USING THE COMMON FUND APPROACH

In the Seventh Circuit, district courts can apply either the lodestar or percentage of the fund method in determining the reasonableness of a negotiated agreement for attorneys' fees in a class or collective action settlement based on a fee-shifting statute.[3] *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 566 (7th Cir. 1994); *Skelton v. General Motors Corp.*, 860 F.2d 250, 256 (7th Cir. 1988), *cert. denied*, 493 U.S. 810 (1989). "When a settlement fund is created in exchange for release of the defendant's liability both for damages and for statutory attorney's fees, equitable fund principles must govern the court's award of the attorney's fees." *Skelton*, 860 F.2d at 256; *Gary v. Sheahan*, No. 96-c-7294, 2001 WL 1543514 (N.D. Ill. Nov. 30, 2001). Here, Class Counsel negotiated a settlement with Defendant that resulted in the creation of a settlement fund in exchange for release of Defendant's liability both for damages and for statutory attorney's fees. (Brayton Decl. ¶ 20 ; Carson Decl. ¶ 26.) As a result, the principles for a common fund case apply here.

In common fund cases, the assumption is that the fee is based on the total amount of the fund, which in cases with a fee shifting statute would include the amounts the defendants are willing to pay as "statutory" fees. *Sherman v. Gateway Electronic Med. Management Sys., Inc.*, Nos. 1:07-cv-0947, 1:07-cv-0433, 2009 WL 48150, at *2 (S.D. Ind. Jan. 7, 2009) (citing

---

[3] The Supreme Court's decision in *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662 (2010) set forth guidance for awarding fees where a plaintiffs' lawyer petitions the court in a fee shifting case, but did not address the standard that a district court should use in determining whether to finally approve a class action settlement negotiated by the parties. This Circuit, along with the Ninth Circuit and Third Circuit, hold that there is no preclusion on recovery of common fund fees where a fee-shifting statute applies. *Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003); *Brytus v. Spang & Co.*, 203 F.3d 238, 246-247 (3rd Cir. 2000); s*ee also Van Horn v. Nationwide Property and Cas. Ins. Co.*, No. 08-cv-605, 2010 WL 1751995 (N.D. Ohio Apr. 30, 2010) (applying common fund approach to class action settlement after *Perdue*, and crosschecking with lodestar and a multiplier to approve fees); *Navarro v. Servisair*, No. C 08-02716, 2010 WL 1729538 (N.D. Cal. Apr. 27, 2010) (same).

*Taubenfeld v. AON Corp.*, 415 F.3d 597, 598 (7th Cir. 2005) (affirming award of 30 percent of fund)). In deciding fee levels in common fund cases, the Court of Appeals for the Seventh Circuit has directed district courts to "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton v. Bernard*, 504 F.3d. 688, 691 (7th Cir. 2007) (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)).

In order to undertake such an analysis, the Court of Appeals for the Seventh Circuit has held that the market price for legal fees "depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." *Synthroid*, 264 F.3d at 721.

### 1. The Risk of Nonpayment Supports The Requested Fee

This was a complicated and uncertain case in which Defendant vehemently contested liability. Defendant claimed throughout the litigation that it had proper procedures in place to, and in fact did, pay its workers for the time they spent donning and doffing protective clothing and equipment. It is also a case that does not lend itself to easy proof of liability or damages given that, by definition, there are no records of the "off-the-clock" work that Plaintiffs alleged. Additionally, many Settlement Class Members were transient (as evidenced by the high turnover rate at the plant at issue), and most workers spoke Spanish as their sole language.

Class Counsel assumed a very real risk in taking on this case. Plaintiffs, through their counsel, took on Defendant, who had far more resources than Class Counsel. Class Counsel took the case on a contingency basis, and invested substantial time, effort, and money with no guarantee of any recovery.

Class Counsel proceeded knowing there was a chance that Defendant would prevail and that, even if Plaintiffs prevailed, there was a chance that the case would take years to bring to

trial and would not be resolved without an appeal. The risk of no recovery in complex class actions of this type is very real. There are numerous cases where plaintiffs' counsel in contingent-fee cases such as this one, after devoting thousands of hours and advancing significant sums in out-of-pocket expenditures, received no compensation whatsoever. *See, e.g., Armstrong v. Whirlpool Corp.*, 2007 U.S. Dist. LEXIS 14635 (M.D. Tenn. 2007) (denying class certification of racial harassment claims); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("The risk of maintaining class action status throughout the trial" was an important factor in approving the class action settlement). From the outset, Defendant has adamantly denied any liability and continues to do so today.

Despite these risks and difficulties, the results obtained by Class Counsel through the settlement of $1,995,000 is remarkable. Putting aside the fact that the individuals who will be receiving awards are predominantly low-wage workers (thereby increasing the immediate significance of this settlement), the settlement is also remarkable because the large amount compensates workers for amounts of unpaid time at the beginning and end of the work day and during workers' meal breaks. As a result of the settlement, many of the settlement class members will be provided with awards of hundreds or thousands of dollars, for claims that were almost certainly too small for them, or for any attorneys, to pursue on an individual basis.

In addition, the settlement is remarkable because it provides for **no reversion** to Defendant. Moreover, the settlement provides for recovery by class members of both their FLSA claims *and* state law claims wage and hour claims. The risk that Class Counsel took relative to the excellent result they obtained for Plaintiffs and the class supports the requested fee.

6

> 2.  **The Quality and Skill With Which Class Counsel Performed The Required Legal Services to Reach Settlement Supports The Requested Fee**

The fairness of this fee award is further supported by the high quality of Class Counsel's legal representation.  The skill utilized by Class Counsel, and the experience, reputation and ability of the attorneys militate in favor of the fee award here.  Class Counsel obtained this settlement efficiently, affording redress to the Settlement Class Members swiftly, without forcing them to wait through protracted and risky litigation.  Here, Class Counsel achieved a substantial benefit for class members in a very timely fashion, providing class members with substantial and certain relief much sooner than if this matter had been extensively litigated, especially considering the difficulty of the case and Indiana Packer's defenses.  (Brayton Decl. at ¶ 18; Carson Declaration at ¶ 24.)

Moreover, Class Counsel did not sacrifice due diligence in achieving an efficient resolution of this case.  As discussed above, Class Counsel reviewed hundreds of relevant documents produced by Defendant, as well as compensation and time-keeping-related records for employees in the proposed Settlement Classes.  In addition, prior to mediation, Class Counsel conducted detailed interviews of dozens of Settlement Class members concerning their wage and hour claims.  (Brayton Decl. at ¶ 17; Carson Decl. at ¶ 23.)

Class Counsel include experienced class action attorneys at two of the leading plaintiffs' employment class action firms in the country.  (Brayton Decl. at ¶ 2; Carson Decl. at ¶ 3.)  They used their full abilities to achieve the successful result here.  (Brayton Decl. at ¶¶ 8-12; Carson Decl. at ¶¶ 16-24.)  Class Counsel's highly-informed, diligent, and efficient prosecution of this matter positioned plaintiffs to successfully settle this case, affording redress to the entire proposed settlement class, and avoided the inevitable expense and risk attendant with protracted litigation.

The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work. Here, Defendant was represented by experienced and skilled lawyers from one of the largest law firms in the United States. Moreover, because Defendant is a large corporation, Defendant's counsel had vast resources with which to defend this action. The ability of Class Counsel to obtain this settlement in the face of such formidable legal opposition confirms the quality of the representation provided, and supports the requested fee.

### 3. The Stakes of the Case for the Individual Class Members and Their Reaction to the Settlement Supports the Requested Fee

In addition to the excellent result obtained by Class Counsel despite the risk of non-recovery, the fee requested should be approved because the prosecution of wage and hour litigation advances the public interest and Congress' stated intent. Congress's goal in enacting the FLSA was "to protect all covered workers from substandard wages and oppressive working hours ... [and] labor conditions [that are] detrimental to the maintenance of the minimum standards of living necessary for health, efficiency and general well-being of workers." *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981).

In awarding fees, courts have recognized the strong public interest served by the private enforcement of the FLSA and other civil rights laws, and the role served by attorney fee awards to ensure the private enforcement of these laws. *Perez v. Carey Intern., Inc.*, No. 06-22225, 2008 WL 4490750, at *14 (S.D. Fla. Sept. 26, 2008); *see also Scott v. Sunrise Healthcare Corp.*, No. 95 C 1277, 1999 WL 787624, at *2 (N.D. Ill. Sept. 23, 1999) ("The court recognizes that Fair Labor Standards Act cases, like Title VII cases, are affected with the public interest, and the value of such a suit to the public may exceed its limited monetary value …").

Here, Class Counsel helped to fulfill the mission of the FLSA by seeking compensation for substantial amounts of time of work performed by thousands of low-wage, predominately

Spanish speaking production line employees. These employees stepped forward to assert their rights, despite substantial fear of retaliation. Without private enforcement of these laws performed on a contingent fee basis, these individuals would likely not have the means to ensure that their rights were enforced. *See also Kleine-Albrandt*, 597 N.E.2d at 1312 (noting policy underlying provision of Indiana wage statute mandating attorneys fees "serves to insure equal access to the courts despite the relative financial condition of the parties.") Therefore, the stakes of the case for the Class and the public interest served by prosecution of this case supports approval of Class Counsel's requested fee.

The importance of the settlement can also be demonstrated by the positive response from the Settlement Class. Pursuant to the Court's March 12, 2010 Order preliminarily approving the Settlement, the Notice of Class Action and accompanying Claim Form were mailed to 5,316 Settlement Class Members. As of the filing of this Motion, (the claims period and objection deadline does not close until July 8, 2010), ***there have been no objections to Class Counsel's request for fees or costs.***[4]

Case law makes clear that the paucity of objections to a proposed class settlement and request for attorneys' fees is strong evidence that the fees are fair and reasonable. *In re Prudential Sec. Ltd. P'ships. Litig.*, 985 F. Supp. 410, 416 (S.D.N.Y. 1997) (quoting *In re Gen. Pub. Utils. Sec. Litig.*, No. 79-1420, 1983 U.S. Dist. LEXIS 11641, at *22 (D.N.J. Nov. 16, 1983)) ("[N]umerous courts have [noted] that 'the lack of objection from members of the class is one of the most important" factors in determining reasonableness of the requested fee); *see also Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) ("The

---

[4] One individual has submitted an objection/dispute regarding his time worked at Indiana Packers. This and any other objections or disputes reported to the Claims Administrator will be more fully addressed in Plaintiffs' Motion for Final Approval.

9

reaction by members of the Class is entitled to great weight by the Court."); *In re Crazy Eddie Sec. Litig*, 824 F. Supp. 320, 327 (E.D.N.Y. 1993) (holding that the lack of objections to the requested fee supported its reasonableness); *Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (objections by "only" 10 percent of the class "strongly favors settlement"). The importance of upholding low-wage workers' federal and state rights, and the positive reaction to the settlement by the Settlement Class supports the requested fee.

Therefore, the equitable principles to be considered by a court when determining the reasonableness of a fee request as a percentage of the fund are satisfied here. The Court should approve Class Counsel's request for fees of one-third the Gross Settlement Amount.

### C. THE TIME AND LABOR EXPENDED BY CLASS COUNSEL SUPPORTS THE REQUESTED FEE

In determining fair and appropriate compensation levels for class counsel, the court may also consider the lodestar analysis. *Williams v. Rohm and Haas Pension Plan*, 04-cv-0078, 2010 WL 1644571 (S.D. Ind. Apr. 21, 2010). The standard in considering the attorneys' lodestar is "whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010); *Connolly v. Nat'l Sch. Bus. Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999); *Bankston v. Illinois*, 60 F.3d 1249, 1256 (7th Cir. 1995).[5]

The parties, through the Settlement Agreement, agreed that Class Counsel would seek up to one-third of the negotiated Settlement Fund in attorneys' fees they incurred in bringing this

---

[5] Indiana state law provide similar rules for determination of attorneys' fees. *See Daimler Chrysler Corp. v. Franklin*, 814 N.E.2d 281, 287-88 (Ind. App. Ct. 2004) (Under Indiana law the court is directed to consider among other factors-"the amount involved and the results obtained," "the fee customarily charged in the locality for similar legal services," as well as "whether the fee is fixed or contingent" in assessing the reasonableness of an award of attorney's fees. ) (citing Indiana's Rule of Professional Conduct 1.5 as guiding the evaluation of the reasonableness of an award of attorney's fees).

10

litigation, subject to the Court's approval.  Here, Class Counsel have collectively spent over 900 hours prosecuting this litigation for the past two years.  Class Counsel's current lodestar is approximately $392,239.50.  (Brayton Decl. at ¶ 5-6, Exhibit 1; Carson Decl. at ¶ 9; Downey Decl. at ¶ 5.)[6]  This lodestar was calculated using Class Counsel's standard rates.  (Brayton Decl. at ¶¶ 7, 15-18; Carson Decl. at ¶ 11; Downey Decl. at ¶ 7.)

Class Counsel have attached declarations concerning the time worked on this case by each of the three primary law firms involved, with a description of the work performed and the reasons therefore, along with their hourly billing rates (which are the elements that determine Class Counsel's lodestar).  *See* Brayton Decl., Carson Decl., and Downey Decl.  Class Counsel worked closely and cooperatively with one another to distribute work assignments, and avoided duplication of effort and unnecessary expenditure of time.  (Brayton Decl. at ¶ 4; Carson Decl. at ¶ 7.)

In determining a reasonable attorney fee, a court will look at the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  These rates are set by determining what a lawyer of comparable skill, experience, and reputation could command in the relevant community.  *Id.* at 895 n.11.  An attorney can make this showing "either by submitting affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work or by submitting evidence of fee awards the attorney has received in similar cases." *Spegon v. Catholic Bishop*, 175 F.3d 544, 556 (7th Cir. 1999).

The rates for Schneider Wallace Cottrell Brayton Konecky LLP and Berger & Montague, P.C., co-lead counsel in this litigation, recently have been approved by district courts, including

---

[6] Due to the amount of privileged information contained in Class Counsel's actual hourly billing records, those detailed records have not been provided here, but can be provided for the Court's *in camera* review should this Court wish to review those records.  (Brayton Decl. at ¶ 5; Carson Decl. at ¶ 10; Downey Decl. at ¶ 5.)

11

for FLSA class and collective actions based on donning and doffing claims. (Brayton Decl. at ¶¶ 16-18, Exhibits 3-5; Carson Decl. at ¶ 22, Exhibit 2.) These rates reflect the reasonable market rates charged in the community for complex class and collective actions.

In addition, Class Counsel estimates that its lodestar will be approximately $436,000 by the time of the final approval hearing, due to the need to work with the Claims Administrator, be available to communicate with class members, and prepare for and attend the hearings on this Motion and on final approval. (Brayton Decl. at ¶ 6.) Accordingly, the mediator-negotiated attorneys' fee award of $665,000 will ultimately result in a multiplier of only approximately 1.53 of Class Counsel's final lodestar. This cross-check provides a reasonable comparison, and is less than the lodestar multiplier that has been used by other district courts. *See, e.g., In re Abbott Laboratories Securities Litigation*, 1995 WL 792083 (N.D. Ill. July 3, 1995) (approving a 31% fee award cross-check with a lodestar multiplier of 2); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) (approved settlement where lodestar cross-check resulted in a multiplier of 3.65).

### D. FEE AWARDS IN SIMILAR CASES ESTABLISH THE MARKET RATE AND SUPPORT THE REQUESTED FEE

Finally, Class Counsel's request of one third of the common fund as a fee is in line with the market rate for contingent fees approved by district courts and courts in this Circuit. District courts in the Seventh Circuit are tasked with doing "their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Taubenfeld v. AON Corp.*, 415 F.3d 497, 599 (7th Cir. 2005) (affirming award of 30 percent of common fund, and noting that fee awards in district courts between 30 and 39 percent of settlement fund demonstrated reasonableness of award). Indeed, many courts have approved common fund fee awards equivalent to or greater than the percentage requested

here, even when the award results in a substantial multiplier.  *See, e.g., Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998) (recognizing that the typical contingent fee for lawyers representing a class is between 33 and 40 percent, and affirming an award equal to 38% of fund); *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399 (7th Cir. 2000) (25% awarded);  *Spicer v. Board of Options Exchange*, 844 F. Supp. 1226 (N.D Ill. 1993) (29% awarded); *Family L.P. v. Price Waterhouse LLP*, 2001 WL 1568856 (N.D. Ill. 2001) (33 1/3 % awarded); *Gilbert v. First Alert, Inc.*, 1998 WL 14206 (N.D. Ill. 1998); (30% awarded); *Goldsmith v. Technology Solutions Co.*, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. 1995) (33 1/3 % awarded); *see also In re Ampicillin Antitrust Litigation*, 526 F. Supp. 494 (D.D.C. 1981) (45% of settlement fund); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 297-298 (N.D. Cal. 1995) (citing cases awarding a fee award of 33%); *Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.*, 480 F. Supp. 1195 (S.D.N.Y. 1979), *aff'd* 622 F.2d 1106 (2nd Cir. 1980) (53% of settlement fund); *Van Gemert v. Boeing Co.*, 516 F. Supp. 412, 420 (S.D.N.Y. 1981) (36% of settlement fund); *In re Buspirone Patent & Antitrust Litig.*, MDL No. 1413, 2003 U.S. Dist. LEXIS 26538 (S.D.N.Y. Apr. 11, 2003) (multiplier was more than eight times counsel's lodestar) ("BuSpar"); *North Shore Hematology-Oncology Assoc., P.C. v. Bristol-Myers Squibb Co.*, No. 04 Civ. 248 (D.D.C. Nov. 30, 2004) (multiplier was well over eight times counsel's lodestar).

     Class Counsel achieved excellent results here.  Based on the amount of time and labor expended by Class Counsel compared to the amount requested, the fees are reasonable.  The request is similar to compensation at the market rate for district courts in this Circuit.  The Court should approve Class Counsel's request for fees of one-third of the Gross Settlement amount, or $665,000.

### E. CLASS COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE REIMBURSED

In addition to being entitled to reasonable attorneys' fees, the FLSA provides for the reimbursement of costs. *See* 29 U.S.C. § 216(b); *Gribble v. Cool Transports, Inc.*, No. 06-cv-04863, 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008) (FLSA mandates the payment of court costs to the plaintiff in the event of settlement). Costs under fee-shifting statutes such as the FLSA include all reasonable out-of-pocket expenditures. *Zabkowicz v. West Bend Co.*, 789 F.2d 540, 553 (7th Cir. 1986); *Henry v. Webermeier*, 738 F.2d 188, 192 (7th Cir. 1984).

Class Counsel now seeks $34,391.63 as reimbursement for their collective costs of bringing this suit. Class Counsel's costs were discussed in mediation.[7] The expenses incurred in this litigation to date are described in detail in the accompanying declarations of Class Counsel. (Brayton Decl. at ¶5 Ex. 2; Carson Decl. at ¶¶ 13-14; Downey Decl. at ¶ 5.) The expenses are of the type typically billed by attorneys to paying clients in the marketplace and include such costs as fees paid to experts, copying fees, computerized research, and travel in connection with this litigation. All of these expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Settlement Agreement, Defendant does not object to the request for costs, and no Settlement Class Member has objected to attorneys' request for fees or costs.

---

[7] At the time of the mediation, Class Counsel had incurred approximately $30,627.97 in out-of-pocket costs. Since that time, Class Counsel has incurred additional costs, as set forth in the declarations. Class Counsel anticipate that there may be additional expenses in administering the settlement and preparing for and attending the Final Approval Hearing, and respectfully request the opportunity to request additional reimbursement of such expenses at the time distribution is made.

14

**III.     CONCLUSION**

Based upon the reasons set forth above, Class Counsel respectfully submits that the request for attorneys' fees and costs is fair and reasonable, and should be approved by the Court.

Dated: May 26, 2010

Respectfully submitted,

 /s/ Shanon J. Carson
Shanon J. Carson
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103

Todd M. Schneider
Clint J. Brayton
SCHNEIDER WALLACE COTTRELL BRAYTON KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, CA 94104

Philip A. Downey
P.O. Box 736
Unionville, PA 19375

*Attorneys for Plaintiffs*
